UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| RANDY WAYNE CARUTHERS, # 404654, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-274 |
| v. | ) ) ) | Honorable Robert Holmes Bell |
| CORRECTIONAL MEDICAL SERVICES, INC., et al., | ) ) ) | **OPINION** |
| Defendants. | ) ) ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. The defendants are Correctional Medical Services, Inc. (CMS), Badawi Abdellatif, M.D., Prison Health Services, Inc. (PHS), and Scott Holmes, M.D. Plaintiff states that he injured his left knee on May 21, 2007. He alleges that Dr. Abdellatif violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by treating his knee in 2007 and 2008 with braces and other conservative care. On January 2, 2009, plaintiff received arthroscopic knee surgery. Plaintiff alleges that Dr. Holmes violated his Eighth Amendment rights in 2009 when his treatment failed to include a second knee surgery that plaintiff desires. Plaintiff alleges Dr. Abdellatif was a CMS employee and that Dr. Holmes was a PHS employee.

The matter is before the court on defendants' motions for summary judgment. (docket #s 63, 64). Plaintiff has filed his response. (docket # 74). On May 31, 2011, defendants filed a reply brief (docket # 75) in which they objected to plaintiff's statement of facts because it was

not supported by evidence. *See* FED. R. CIV. P. 56(c)(2). Upon review, the court sustains defendants' objections. However, even assuming plaintiff had supported his statement of facts with evidence, the result would be unaltered. Plaintiff's disagreement with the medical treatment he has received for his left knee problems falls short of an Eighth Amendment violation. Defendants' motions for summary judgment will be granted and judgment will be entered in defendants' favor on all plaintiff's claims.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Kizer v. Shelby County Gov't*, 649 F.3d 462, 466 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an

absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, No. 10-1050, __ F.3d __, 2011 WL 4634215, at * 5 (6th Cir. Oct. 7, 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL.,

MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to the portion of the motion for summary judgment by Dr. Holmes and PHS seeking dismissal of plaintiff's claims based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

      **B.**      **Defendants' Objections**

Defendants Holmes and PHS have objected to section B of plaintiff's statement of facts (Plf. Brief at 1-9, docket # 71-1, ID#s 703-11), which purports to be a "rebuttal" to Dr. Holmes's declaration and plaintiff's medical records. (docket # 75, ID # 752). The "facts" asserted by plaintiff are not supported by admissible evidence. Section B of plaintiff's brief does not satisfy the requirements for an affidavit or declaration under Rule 56(c)(4). FED. R. CIV. P. 56(c)(4); *see* 28 U.S.C. § 1746; *see also Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847-48 (6th Cir. 2010). It is well established that statements appearing in a party's brief[1] are not evidence. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Defendants' objection "functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56 (2010 Advisory Committee comments); *see ForeWord Mag., Inc.*

---

[1] Plaintiff's complaint and supplement (docket #s 1, 12) are not verified under penalty of perjury. They cannot function as affidavits in opposition to defendants' motions for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000).

*v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at * 2 (W.D. Mich. Oct. 31, 2011). Plaintiff has not addressed, much less carried his burden. Defendants' objections are sustained.

### C. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants PHS and Dr. Holmes have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion."

548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 674 (6th Cir. 2009); *see also Vandiver v. Corr. Med. Servs.*, 326 F. App'x 885, 888 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a

response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has clearly held that an inmate does not exhaust available administrative remedies when the inmate fails to invoke the grievance procedure. *Napier v. Laurel County*, *Ky*, 636 F.3d 218, 224 (6th Cir. 2011). An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *Id.*; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Facts**

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections (MDOC) serving lengthy prison sentences imposed in 2006 on his criminal convictions for home invasion-first degree and assault with intent to do great bodily harm less than murder. He is currently an inmate at the G. Robert Correctional Facility (JCF) in

Jackson, Michigan. The defendants are Correctional Medical Services, Inc. (CMS), Badawi Abdellatif, M.D., Prison Health Services, Inc. (PHS), and Scott L. Holmes, M.D.

On September 21, 2007, plaintiff stated that he injured his left knee in a slip-and-fall in the shower at the Lakeland Correctional Facility (LCF). Plaintiff stated that before incarceration he had experienced the same problem of his knee popping out of place when he "stepped off a forklift." Plaintiff's knee had no swelling, redness, or warmth. The knee had a full range of motion. Plaintiff was advised to keep his knee elevated and to use the over-the-counter pain medication. Plaintiff was relieved from his work assignment for one month. (docket # 73, ID# 687-88). October 2, 2007 x-rays of plaintiff's left knee returned normal results, with no evidence of fracture, dislocation, or other gross osseous or articular abnormalities. (*Id.,* ID# 688).

Dr. Abdellatif first examined plaintiff on October 12, 2007. Plaintiff had a full range of motion, a slight amount of effusion, and a lax-feeling anterior cruciate ligament (ACL) in his left knee. Dr. Abdellatif ordered crutches (which plaintiff declined) and a derotational knee brace. (*Id.,* ID#s 690-91). Dr. Abdellatif then requested a physical therapy consultation to properly fit the brace. Plaintiff received physical therapy and the brace was issued on December 3, 2007.

Dr. Abdelatif next saw plaintiff on January 4, 2008, after plaintiff requested to be removed from his yard work crew assignment. (docket # 73, ID# 692). Dr. Abdellatif determined that plaintiff was capable of performing his job with the knee brace. (*Id.*). When Dr. Abdellatif examined plaintiff on May 12, 2008, plaintiff complained that despite the brace, his left knee continued to "pop out." (*Id.,* ID# 693). Dr. Abdellatif found that plaintiff's knee examination was normal with the exception of a lax ACL. He determined that it was medically appropriate to continue the knee brace. (*Id.*). On July 23, 2008, plaintiff was transferred to the Bellamy Creek

-9-

Correctional Facility (IBC), and Dr. Abdellatif had no further involvement in plaintiff's medical care.

An August 21, 2008, MRI of plaintiff's left knee revealed tear on the posterior horn of the medial meniscus. (docket # 66, ID# 596; Holmes Decl. ¶ 3). On September 29, 2008, plaintiff received an outside orthopedic consultation. (Holmes Decl. ¶ 3). On January 2, 2009, plaintiff underwent surgery at Carson City Hospital. Dr. Young performed a diagnostic and surgical arthroscopy of plaintiff's left knee with partial resection of the medial meniscus. During this surgery, Dr. Young noted that plaintiff had a ruptured ACL (docket # 66, ID#s 599-600; Holmes Decl. ¶ 3). Dr. Young gave plaintiff a post-surgery prescription for a three-day supply of Ultram, after which plaintiff was to take Motrin for any residual pain associated with the surgery. (Holmes Decl. ¶ 4).

On January 14, 2009, Dr. Holmes examined plaintiff. Plaintiff was able to bend his knee beyond ninety degrees. Plaintiff was wearing the ACL brace, which is designed to provide the stability that would normally have been provided by the ACL. Plaintiff requested a prescription for more Ultram, and Dr. Holmes acceded to this request. (Holmes Decl. ¶ 5; docket # 66, ID# 607). On January 14, 2009, Dr. Holmes authorized plaintiff to eat meals in his cell for one week, use a wheelchair for two weeks, and relieved plaintiff of his work assignment through February 14, 2009. (docket # 74-2, ID# 722). On January 20, 2009, plaintiff asked that he be allowed to extend the time in which he could receive his meals in his cell. Dr. Holmes declined this request. (Holmes Decl. ¶ 6; docket # 66, ID#s 608-09). On January 23, 2009, Dr. Holmes denied plaintiff's request for more Ultram. Ultram is a synthetic narcotic and it was not medically appropriate treatment three weeks post-surgery. (Holmes Decl. ¶ 7; docket # 66, ID# 611).

On January 28, 2009, Dr. Holmes conducted a follow-up examination. Dr. Holmes instructed plaintiff on an exercise program to help strengthen his quadriceps. The quadriceps play an important role in providing knee joint stability. "Despite being instructed to wear a brace, [plaintiff] was not wearing one when he presented for this visit. He stated that he preferred the wheelchair." (Holmes Decl. ¶¶ 8, 9; docket # 66, ID#s 616-17).

On February 2, 2009, Dr. Holmes examined plaintiff. Plaintiff reported that he preferred a cane over other assistive devices. Dr. Holmes observed that plaintiff was walking very well using a cane. (Holmes Decl. ¶ 10; docket # 66, ID# 619). On February 4, 2009, Dr. Holmes changed plaintiff's prescription from Salsalate to Motrin at the patient's request. (Holmes Decl. ¶ 10; docket # 66, ID# 620).

On February 20, 2009, Janmeet Sahota, D.O, conducted a consultative examination. (docket # 66, ID#s 622-23; docket # 74-3, ID#s 742-43). Dr. Sahota offered plaintiff a surgical treatment option with significant attendant risks:

> I would recommend that we get an MRI of his knee to rule out a lateral meniscus tear as that would be important for preoperative planning as he has some lateral joint line pain. This maybe just due to instability, however, I would like to know whether he has a meniscus tear prior to proceeding with surgery. With regards to the instability that he has the only thing I have to offer him as he has failed with ACL bracing would be an arthroscopic ACL reconstruction. I offered the patient to have an allograft or an autograft. He chose to have an allograft tendon and I told him that the expected recovery from such a surgery would be four to six months. I explained to him the risks of the surgery include bleeding, infection, risks from anesthesia, deep vein thrombosis, pulmonary embolus and even death and also a possibility of recurrent instability if he is not compliant with physical therapy or has another injury. He understands this and plan will be for patient to have the MRI of the left knee to rule out a meniscus tear and to follow-up with me after that MRI is completed and at that point we will set him up for an arthroscopic ACL reconstruction and address any meniscal pathology as noted on this MRI.

(*Id.*, ID#s 742-43). On April 22, 2009, Dr. Holmes filed a consultation request regarding the MRI and ACL repair recommended by Dr. Sahota. This request was not an indication that Dr. Holmes agreed with Dr. Sahota's recommendations, but it was part of the review process. (Holmes Decl. ¶¶ 12-14; docket # 66, ID#s 624-25). When Dr. Sylvia McQueen inquired regarding the impact of plaintiff's ACL impairment, Dr. Holmes replied that plaintiff was able to walk with a cane and that there was no impairment of his activities of daily living. McQueen recommended that plaintiff be treated conservatively and she saw no need for the additional MRI suggested by Dr. Sahota. Dr. Holmes agreed with Dr. McQueen's recommendations. (Holmes Decl. ¶¶ 14, 23-25; docket # 66, ID#s 627-29).

On May 16, 2009, a nurse noted that plaintiff was carrying his cane rather than using it. Plaintiff walked rapidly without a limp. (Holmes Decl. ¶ 15; docket # 66, ID# 630). On June 22, 2009, a nurse practitioner noted that plaintiff was walking without using his cane very much. Plaintiff was able to stop and turn to look at females without difficulty. His gait was upright without limp or sway. The nurse practitioner's assessment was that plaintiff did not need a cane. Her plan was to have plaintiff sent to Duane Waters Hospital for a new brace or straps. (Holmes Decl. ¶ 18; docket # 66, ID# 635). On June 23, 2009, plaintiff was provided with a new knee brace. Progress notes indicate that plaintiff was satisfied with the fit of his new brace. Plaintiff was very dissatisfied when he was required to turn in his cane. (Holmes Decl. ¶ 19; docket # 66, ID#s 636-38). On September 10, 2009, plaintiff asked to be moved to a lower floor at IBC. Dr. Holmes denied plaintiff's request because plaintiff had the strength and ability sufficient to negotiate stairs. (docket # 66, ID# 643). On or about November 4, 2009, plaintiff was transferred from IBC to JCF. Dr. Holmes has not treated plaintiff since this transfer. (docket # 66, ID# 649-50; Holmes Decl. ¶ 22).

Plaintiff's medical records reveal that he continues to receive significant medical attention. (docket # 66, ID#s 649-69).

On March 19, 2010, plaintiff filed this lawsuit.

## Discussion

### 1.    Doctors Abdellatif and Holmes

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against these defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will

have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The objective component requires a plaintiff to show that 'the medical need at issue is sufficiently serious.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)(quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)); *Jones v. Muskegon County*, 635 F.3d 935, 941 (6th Cir. 2010). A reasonable trier of fact could find that plaintiff's left knee condition satisfies the objective component of an Eighth Amendment violation.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 987-88 (6th Cir. 2010); *Dotson v. Phillips*, 385 F. App'x 468, 471 (6th Cir. 2010) ("Mere negligence does not amount to deliberate indifference, as medical malpractice does not

become a constitutional violation merely because the victim is a prisoner."); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims . . . ."). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d at 169; *Westlake*, 537 F.2d 860 n.5.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against Drs. Abdellatif and Holmes. The record shows that the doctors treated plaintiff's condition on an ongoing basis and displayed no deliberate indifference. It is pellucid that plaintiff would prefer the arthroscopic ACL reconstruction surgery suggested by Dr. Sahota, but he has not shown that more conservative alternative treatment provided by defendants was medically inappropriate, much less tantamount to criminal recklessness. *See Farmer v. Brennan*, 511 U.S. at 837. Plaintiff's disagreement with defendants' diagnosis and treatment falls far short of supporting an Eighth Amendment claim. *See Lyons v. Brandly*, 430 F. App'x 377, 380-81 (6th Cir. 2011); *see also Almond v. Pollard*, No. 11-1555, 2011 WL 4101460, at * 3 (7th Cir. Sept. 15, 2011) (The prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference.") (citing *Alspaugh v. McConnell*, 643 F.3d at 169). The court finds that defendants Abdellatif and Holmes are entitled to judgment in their favor as a matter of law on plaintiff's Eighth Amendment claims. No reasonable trier of fact faced with this record could find that defendants were deliberately indifferent to plaintiff's serious medical needs.

### 2. Prison Health Services, Inc. and Correctional Medical Services, Inc.

Plaintiff seeks to hold the corporate defendants PHS and CMS vicariously liable for the acts of their employees. A private corporation cannot be held liable under § 1983 on the basis of *respondeat superior* or vicarious liability. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Rather, the plaintiff must establish a policy or custom that caused the constitutional violation. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

Plaintiff quotes purported excepts from PHS's contract with the MDOC and argues that PHS "failed to follow [its] own terms of [its] contract." (Plf. Brief at 12, docket # 74-1, ID# 714). This lawsuit is not a state-law breach of contract case, and plaintiff is not a party to PHS's contract with the State. Further, plaintiff is not a third-party beneficiary of the contract. Plaintiff cannot perform an "end run" around the vicarious liability rule by recasting his Eighth Amendment claims as third-party beneficiary claims. *See Haithcox v. Greiner*, No. 06-11756, 2010 WL 1292712, at * 6 (E.D. Mich. Mar. 15, 2010); *accord Zimmermann v. Michigan*, No. 1:11-cv-1178, 2011 WL 5881777, at * 5 (W.D. Mich. Nov. 23, 2011).

Plaintiff argues that the MDOC's contracts with PHS and CMS are "unconstitutional" and that defendants failed to provide him with adequate "quality assurance" regarding his healthcare. (Plf. Brief at 12-13, 15-17, docket # 74-1, ID#s 714-15). Bare arguments do not suffice at the summary judgment stage. Plaintiff has not presented evidence of a custom or policy sufficient to establish entitlement to relief against PHS and CMS. *See Barnett v. Luttrell*, 414 F. App'x 784, 790 (6th Cir. 2011); *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x at 989.

### 3. Exhaustion

On an alternative basis, defendants PHS and Dr. Holmes are entitled to dismissal of plaintiff's claims based on the affirmative defense that plaintiff did not properly exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Defendants have supplied evidence that the grievances plaintiff filed and pursued through Step III decisions do not correspond to any of the claims he is asserting against Dr. Holmes and PHS. (docket # 64-3, ID#s 544-46, 548-49, 558-63, 568-72). Plaintiff's 2008 grievance against Dr. Abdellatif (docket # 64-3, ID# 562) does not suffice. *See Sullivan v. Kasajaru*, 316 F. App'x at 470. The court finds that defendants Holmes and PHS have carried their burden on the affirmative defense.

### Conclusion

For the foregoing reasons, defendants' motions for summary judgment (docket #s 63, 64) will be granted and judgment will be entered in defendants' favor on all plaintiff's claims.


Dated: December 21, 2011                                /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE